IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br>APHTON CORPORATION,<br><br>Debtor. | Chapter 11<br><br>Case No. 06-10510 (CSS) |
| WAYNE WALKER, as Trustee of<br>Aphton Corporation<br><br>Plaintiff<br><br>v.<br><br>SONAFI PASTEUR, a/k/a AVENTIS, SF CAPITAL PARTNERS, HEARTLAND GROUP, INC., solely on behalf of the HEARTLAND VALUE FUND, and LEGG MASON PARTNERS FUNDAMENTAL VALUE FUND, INC. f/k/a SMITH BARNEY FUNDAMENTAL VALUE FUND, INC.,<br><br>Defendants. | Adv. Proc. No. 08-50636 |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION
### OF SANOFI PASTEUR LIMITED AND AVENTIS PHARMACEUTICALS INC.
### TO DISMISS COMPLAINT

Sanofi Pasteur Limited ("SP") and Aventis Pharmaceuticals, Inc. ("API"),[1] by and through their counsel, respectfully submit this memorandum of law in support of their motion to dismiss the claims asserted against them (the "Motion") in the First Amended Complaint of Wayne Walker, as Trustee of Aphton Corporation To Avoid And Recover Transfers Pursuant To 11 U.S.C. §§ 544, 548, and 550, dated May 29, 2008 (the "Complaint") in the above-captioned

---

[1] In the Complaint, Sanofi Pasteur Limited and Aventis Pharmaceuticals Inc. are improperly named as "Sonafi Pasteur a/k/a Aventis." SP and API are separate and distinct legal entities. SP and API reserve all rights and remedies as a result of the improper description of the defendant in the Complaint. In this regard, SP and API note by way of example that the Complaint contains no allegations supporting a veil-piercing or similar theory.

adversary proceeding pursuant to Fed. R. Civ. P. 12(b)(6). In support of the Motion, SP and API state as follows:

## PRELIMINARY STATEMENT

1. Wayne Walker, as Trustee (the "Trustee") of Aphton Corporation ("Aphton"), asserts constructive fraudulent conveyance claims against "Aventis" (Counts I-III of the Complaint) based on a redemption payment of $3 million (plus accrued interest) pursuant to the terms of a Debenture. This payment was made outside of the 90-day preference period set forth in Section 547(b) of the Bankruptcy Code. Thus, the Trustee's alleged fraudulent transfer was nothing more than a payment upon an antecedent debt by Aphton supported by adequate consideration. A cursory review of the Complaint and the attached exhibits confirm this reality and the Trustee has no basis to argue otherwise. The fraudulent conveyance claims are frivolous and must be dismissed.

2. The Complaint also asserts a tortious interference claim (Count IV) against "Aventis". SP and API have been advised by the Trustee's counsel that it will voluntarily dismiss this Count of the Complaint. Accordingly, this Motion does not address the merits of Count IV.

## BACKGROUND

3. On May 9, 2008, the Trustee filed the above-captioned adversary proceeding. The complaint was amended on May 29, 2008 [Docket No. 5]. Pursuant to two Stipulations Extending Time to Respond to Complaint, dated July 2, 2008 and August 6, 2008, the time to answer, move or otherwise respond to the Complaint has been extended through and including August 31, 2008 [Docket Nos. 10 and 13].

4. The Complaint alleges that the relationship between "Aventis" and Aphton began with a Co-Promotion Agreement and License executed on February 14, 1997 (the "CPAL"). *See* Complaint, ¶ 13. By its clear terms, the CPAL is between Aphton and Connaught

Laboratories Limited ("CLL"). *See* Complaint, Ex. A. CLL entered into the agreement on its own behalf and on behalf of its "Affiliates." *See* Complaint, Ex. A, p. 1. The Affiliates are described in the CPAL as including Pasteur Merieux Connaught ("PMC"). *See* Complaint, Ex. A, p. 1. The Complaint indicates that the purpose of the CPAL was to develop a drug designed to treat cancer known as Insegia. *See* Complaint, ¶ 13.

5. The Complaint alleges that, in addition to the CPAL, Aphton and "Aventis" entered into two related supply agreements dated August 1, 1998, which required "Aventis" (through PMC) to supply Aphton with certain biological materials necessary for Aphton's development of its products and required Aphton to supply "Aventis" with its product. *See* Complaint, ¶ 16. These agreements, and the parties to these agreements, are alleged to be as follows:

- <u>PMC Supply Agreement dated August 1, 1998 between CLL and Aphton Corporation</u> ("<u>PMC Supply Agreement</u>"). This agreement governs the supply by PMC of diphtheria toxoid and tetanus toxoid for inclusion in products developed by Aphton including Gastrimmune.

- <u>Aphton Supply Agreement dated August 1, 1998 between CLL and Aphton Corporation</u> ("<u>Aphton Supply Agreement</u>"). This agreement provides that Aphton will supply Gastrimnune for PMC to co-promote, market and distribute in accordance with the CPAL.

*See* Complaint, Ex. B.

6. On December 19, 2002, Aphton and API executed a non-binding letter of intent regarding a potential restructuring of the CPAL. *See* Complaint, Ex. C. The evidence of this proposed restructuring agreement attached to the Complaint is only this non-binding letter of intent, which merely states that the parties *intended* to draft definitive agreements. *See* Complaint, Ex. C. Such definitive agreements were to contemplate a license for "G17DT" and related products (for active immunization targeting gastrin or its receptors), a license for "MAbs" and related products targeted at gastrin or its receptors, and a right of first refusal for "GERD". *See* Complaint, Ex. C. Had these definitive agreements been drafted and executed, API (or one

of its affiliates) would have become a party to the restructured CPAL. However, there is no allegation that such agreements were ever drafted or executed. Consequently, the CPAL remained with SP (formerly CLL), a separate legal entity from API.

7. In addition, among other things, the letter of intent provides as follows: "Contemporaneously with the execution of this Letter of Intent, [API] and Aphton also will enter into a Debenture Purchase Agreement pursuant to which Aphton will issue to [API], and [API] will purchase from Aphton, a Debenture . . . in the principal amount of $3 million." *See* Complaint, Ex. C, p. 1.

8. Also on December 19, 2002, Aphton and API executed such a Debenture Purchase Agreement. *See* Complaint, ¶ 19. The Complaint alleges that the Debenture Purchase Agreement was entered into in connection with the restructuring agreement referred to above. *See* Complaint, ¶ 19. However, as noted above, the potential restructuring of the CPAL was never consummated (and the Complaint fails even to allege that it was).

9. Pursuant to the executed Debenture Purchase Agreement, Aphton sold a convertible debenture in the amount of $3 million to API (the "Debenture"). *See* Complaint, ¶ 20.

10. The Complaint further alleges that, by letter dated April 27, 2005, "Aventis" demanded payment of $3 million pursuant to the Debenture. *See* Complaint, ¶ 24. As set forth in the demand letter, Aphton's public filings revealed that it had signed prohibited collaboration agreements with certain third-parties with respect to "Projects" (as defined in the December 19, 2002 letter of intent), and accordingly redemption was mandatory pursuant to Section 3(c) of the Debenture. *See* Complaint, Ex. E.

11. The Complaint alleges that in exchange for the return of Aphton's rights to market the non-FDA approved Insegia and the forgiveness of a $1.8 million receivable due to

"Aventis," Aphton repaid the full $3 million demanded under the Debenture and gave up the right to continue to receive the biological agents necessary to continue its work with Insegia. *See* Complaint, ¶ 25. This assertion is factually inaccurate and totally inconsistent with the Exhibits to the Complaint: the redemption of the Debenture and the termination of the CPAL were unrelated events involving two separate and distinct corporate entities and different contractual agreements among different parties. *See* Complaint, Exhibits D and H. Indeed, the $3 million mandatory redemption of the Debenture in accordance with its terms occurred on August 4, 2005, which pre-dated the formal termination of the CPAL (see below) by about 3 months. Most importantly, the Complaint appears to disregard the antecedent $3 million debt that the Debenture redemption satisfied.

12. By letter dated November 2, 2005, a letter agreement was entered into by SP (as successor-in-interest to CLL) and Aphton concerning termination of the CPAL, the Aphton Supply Agreement, and the PMC Supply Agreement. *See* Complaint, ¶ 29, Ex. H. In this letter agreement, SP forgave a receivable due from Aphton to SP for "conjugation services" in the amount of $1.8 million. *See* Complaint, Ex. H, p. 1. The letter agreement also contained, *inter alia*, the following relevant provisions --

- "Subject to the foregoing, Aphton and sanofi pasteur will enter into a new supply agreement on terms which will be negotiated and agreed upon by the parties hereto…" *See* Complaint, Ex. H, p. 2.

- "Neither party shall make a claim against, nor be liable to, the other party, including, without limitation, any consequential, special, incidental or punitive damages or lost profits, in the event that any loss is incurred by any party as a result of this termination Letter Agreement, or as a result of the negotiations or termination of such negotiations of further agreements in connection with the royalty and/or future diphtheria supply contemplated in this termination Letter Agreement without reaching final agreement." *See* Complaint, Ex. H, p. 3.

The termination agreement makes no mention whatsoever of the $3 million redemption payment under the Debenture. *See* Complaint, Ex. H. Any effort by the Trustee to link these two distinct transactions is simply not supported by the record.

13. Based on the facts alleged in the Complaint, the Trustee sets forth in Counts I - IV claims against "Aventis." Counts I - III of the Complaint set forth constructive fraudulent conveyance claims, while Count IV sets forth a purported tortious interference with contract claim. However, as noted above, the Trustee's counsel has indicated that it will voluntarily dismiss Count IV.

## ARGUMENT

14. The Complaint's remaining claims against "Aventis" -- Counts I - III -- should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) (made applicable to this proceeding by Federal Bankruptcy Rule 7012(b)) because the Complaint fails to state a claim upon which relief can be granted. In short, the Complaint does not adequately plead that Aphton's $3 million redemption payment to "Aventis" constituted a fraudulent transfer.

15. When deciding a motion to dismiss under Rule 12(b)(6), the court "must accept as true all allegations in the complaint and all reasonable inferences drawn from those allegations, and view them in light most favorable to the plaintiff." *See Schrob v. Catterson*, 948 F.2d 1402 (3rd Cir. 1991); *In re Insilco Tech., Inc.*, 351 B.R. 313, 316 (Bankr. D. Del. 2006). However, courts should not accept as true conclusory statements of fact or law contained in the complaint. *See In re Plassein Intern. Corp.*, 352 B.R. 36, 39 (Bankr. D. Del. 2006) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (courts need not accept a complaint's legal conclusions when deciding a motion to dismiss)); *Jeffery Y. v. St. Mary's Area Sch. Dist.*, 967 F.Supp. 852, 854 (W.D.Pa. 1997) (courts need not accept conclusions of law stated in the complaint when determining a motion to dismiss).

16. In this matter, the Trustee attached documents as exhibits to the Complaint and incorporated documents by reference. In deciding whether to dismiss, the Court may consider such documents and may also consider matters of which the Court may take judicial notice. *In re Fruehauf Trail Corp.*, 250 B.R. 168, 183 (Bankr. D. Del. 2000) (citing *PBGC v. White*, 998 F.2d 1192, 1196 (3d Cir. 1993)). In considering the documents attached to the Complaint, "if the allegations of [the] complaint are contradicted by documents made a part thereof, the document controls and the Court need not accept as true the allegations of the complaint." *Sierra Invs., LLC v. SHC, Inc. (In re SHC, Inc.)*, 329 B.R. 438, 442 (Bankr. D. Del. 2005) (Walrath, J.).

### I. *Counts I And II Must Be Dismissed Because The Complaint Fails To State A Claim To Avoid Or Recover The Redemption Payment Made To "Aventis" As A Fraudulent Transfer Under Either State Or Federal Law.*

17. Each of the Complaint's fraudulent conveyance claims against "Aventis" seeks return of Aphton's $3 million redemption payment to API which was made on August 4, 2005 pursuant to the terms of the Debenture. The Trustee does not allege, or even suggest, that the redemption payment was made with actual fraudulent intent. Thus, as is the case with any "constructive" fraudulent conveyance claim, these claims rise or fall on the issues of (i) insolvency and (ii) whether Aphton received reasonably equivalent value for the $3 million paid under the Debenture. This Motion will focus on the reasonably equivalent value issue as there is no question that Aphton did receive equal value: in December 2002, Aphton received $3 million from API in exchange for the Debenture and, in August 2005, API received $3 million plus interest from Aphton in satisfaction of the Debenture.[2]

18. The Complaint alleges that, in exchange for the return of Aphton's rights to market the non-FDA approved Insegia and the forgiveness of a $1.8 million receivable due to

---

[2] SP and API reserve all other rights, remedies and defenses to the extent necessary following disposition of this Motion including, but not limited to, the right to contest that Aphton was insolvent at the time of the transfer and the right to seek counsel fees and expenses.

"Aventis," Aphton repaid the full $3 million demanded under the Debenture and gave up the right to continue to receive the biological agents necessary to continue its work with Insegia. *See* Complaint, ¶ 25. This assertion is factually inaccurate and contrary to the clear terms of the Exhibits to the Complaint. In fact, the redemption of the Debenture and the termination of the CPAL were unrelated events involving two separate and distinct corporate entities and different contractual agreements among different parties. *See* Complaint, Exhibits A-E and H. Indeed, the $3 million mandatory redemption of the Debenture in accordance with its terms pre-dated the formal termination of the CPAL by about 3 months. Further, as noted, the Complaint appears to disregard the antecedent $3 million debt owed by Aphton to API under the Debenture. Because the allegations of the Complaint are contradicted by the documents attached thereto and incorporated therein, the Court is not compelled to accept the Complaint's allegations regarding those documents as true. *SHC, Inc.*, 329 B.R. at 442.

19. It is undisputed that in December of 2002, API transferred $3 million to Aphton under the terms of the Debenture. The repayment by Aphton of $3 million in August 2005 in accordance with the mandatory redemption provisions of the Debenture, therefore, was nothing more than satisfaction of an antecedent debt. As a matter of law, the dollar-for-dollar payment of a legitimate antecedent debt cannot be constructively fraudulent. *See In re APF Co.*, 308 B.R. 183 (Bankr. D. Del. 2004); *In re SHC, Inc.*, 329 B.R. 438 (Bankr. D. Del. 2005); *In re Rosen Auto Leasing, Inc.*, 346 B.R. 798 (8th Cir. B.A.P. 2006); *In re First Alliance Mortg. Co.*, 298 B.R. 652 (C.D. Cal. 2003); *In re Carrozzella & Richardson*, 302 B.R. 415 (Bankr. D. Conn. 2003); *see In re Montalvo*, 333 B.R. 145 (Bankr. W.D. Ky. 2005) (husband giving wife money to meet ordinary household expenses was in satisfaction of his legal obligation to support his wife; transfer was for reasonably equivalent value as a matter of law); *In re Advanced Telecommunication Network, Inc.*, 321 B.R. 308 (Bankr. M.D. Fla. 2005) (money paid in an arm's-length transaction to settle litigation is an exchange for reasonably equivalent value).

20. In *In re APF Co.*, 308 B.R. 183, 187 (Bankr. D. Del. 2004), Judge Walsh recognized that the debtor's payments on certain promissory notes arising from defendants' sale of their businesses to debtor "were made for value-satisfaction of an antecedent debt" citing to *B.Z. Corp. v. Continental Bank (In re B.Z. Corp)*, 34 B.R. 546 (Bankr. E.D. Pa. 1983). However, the court did not dismiss the complaint because it also asserted a § 548(a)(1)(A) claim for actual fraudulent intent, and reasonably equivalent value is irrelevant to such a claim. In this case, the Trustee does not allege that the transfer from API to Aphton was made with actual fraudulent intent. Thus, *APF* actually supports dismissal of the claims against "Aventis".

21. Courts in other jurisdictions have held that when a transfer is made in satisfaction of an antecedent debt, that transfer may not be set aside as constructively fraudulent. *See, e.g., Atlanta Shipping Corp. v. Chemical Bank*, 818 F.2d 240, 249 (2d Cir. 1987) ("In general, repayment of an antecedent debt constitutes fair consideration unless the transferee is an officer, director or major shareholder of the transfer"); *In re Trace Int'l Holdings, Inc.*, 301 B.R. 801, 805 (Bankr. S.D.N.Y. 2003) ("Past consideration is good consideration. An 'antecedent debt' satisfies the requirement of fair consideration and reasonably equivalent value, and putting aside transfers to insiders, the payment of an existing liability is not fraudulent."); *In re B.Z. Corp.*, 34 B.R. 546, 548 (Bankr. E.D. Pa. 1983) ("The loan payments made [by the debtor] are not avoidable since under § 548(d)(2)(A) the payments were made for value, i.e., 'the satisfaction of . . . [an] antecedent debt of the debtor.'").

22. Count I of the Complaint, which seeks to avoid the $3 million transfer to "Aventis" pursuant to section 544, fails to state a viable claim. Count I alleges the Trustee may avoid Aphton's transfers under the Pennsylvania and Delaware versions of the Uniform Fraudulent Transfer Act (the "UFTA"). To the contrary, the Pennsylvania and Delaware versions of the UFTA contain provisions, similar to section 548 below, making clear that satisfaction of antecedent debt constitutes "reasonably equivalent value." *See* 12 Pa. C.S.A. § 5103(a) ("Value is given for a transfer . . . if, in exchange for the transfer or obligation, . . . an

antecedent debt is secured or satisfied . . . "); 6 Del. C. §1303(a) (same). Accordingly, the transfers to "Aventis" were not constructively fraudulent under Pennsylvania or Delaware law and, therefore, the Trustee has no basis to rely on section 544.

23. Count II of the Complaint seeks to avoid the $3 million payment as a constructively fraudulent transfer pursuant to section 548(a). A transfer may be avoided pursuant to section 548(a) only if that transfer was made when the debtor was insolvent <u>and</u> the debtor received "less than reasonably equivalent value in exchange for such transfer or obligation." 11 U.S.C. § 548(a)(1)(B). The Bankruptcy Code further provides that "'value' means property, or satisfaction or securing of a present or antecedent debt of the debtor, . . . " 11 U.S.C. § 548(d)(2)(A). Thus, the clear language of section 548 indicates that satisfaction of an antecedent debt constitutes reasonably equivalent value.

24. Consequently, Count II of the Complaint, which seeks to avoid Aphton's transfers to "Aventis" as constructively fraudulent under section 548, does not state a cause of action.

## II. *Count III Must Be Dismissed Because Payments To "Aventis" Cannot Be Avoided Under Sections 544 Or 548.*

25. Section 550 provides that "to the extent that a transfer is avoided under section 544 . . . [or] 548 . . . of this title, the trustee may recover . . . the property transferred . . . from the initial transferee of such transfer or the entity for whose benefit such transfer was made." 11 U.S.C. § 550(a)(1). As explained above, however, the transfers to "Aventis" cannot be avoided under sections 544 or 548. Thus, section 550 is patently inapplicable here.

26. Moreover, under section 550(b)(1), the Trustee may not recover from "a transferee that takes for value, including satisfaction . . . of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided." 11 U.S.C. § 550(b)(1). As a matter of law, the challenged transfers provided Aphton with "value" through the

satisfaction of the Debenture. Also, the Trustee does not (and could not) make allegations in the Complaint that "Aventis" acted in bad faith or had knowledge of the purported voidability of the transfer. Consequently, Count III of the Complaint must be dismissed.

### III. *The Distinction Between Preferences And Fraudulent Transfers Mandates Dismissal Of The Complaint.*

27. In effect, the Complaint's Counts against "Aventis" are a transparent attempt to pursue time-barred preference claims by mislabeling them as fraudulent transfers. Many courts have stated that the distinction between a preference and a fraudulent transfer is a meaningful one so that a time-barred preference action may not be pled as a fraudulent transfer action. *See, e.g., Boston Trading Group, Inc. v. Burnazos*, 835 F.2d 1504, 1509, 1511 (1st Cir. 1987) (a preference "is not a fraudulent conveyance." "The basic object of fraudulent conveyance law is to see that the debtor uses his limited assets to satisfy some of his creditors; it normally does not try to choose among them."); *In re Applied Theory Corp.*, 330 B.R. at 363 n.2 (affirming dismissal of fraudulent transfer claim where "facts are evocative of a voidable preference," but the preference claim was time-barred); *In re Sharp Int'l Corp.*, 302 B.R. 760, 780 (E.D.N.Y. 2003) ("the fundamental principle [is] that a preference – a payment by an insolvent debtor satisfying debts to one creditor at the expense of others – is not a fraudulent conveyance"); *In re Trace Int'l Holdings, Inc.*, 301 B.R. at 805-06 ("If there is in our law one point which is more ungrudgingly accepted than others, it is that the preferential transfer does not constitute a fraudulent conveyance.") (quoting 1 Garrard Glenn, Fraudulent Conveyances and Preferences § 289, at 488 (rev. ed. 1940)); *In re Kaplan*, 264 B.R. at 330 (dismissing fraudulent transfer action where "[i]t may be that the Debtor has confused a fraudulent conveyance with a preference").[3] Consequently, the Trustee's fraudulent transfer claims against "Aventis" must be dismissed.

---

[3] Commentators agree that a preference may not be a fraudulent transfer. *See* Weintraub & Resnick, Bankruptcy Law Manual, ¶ 7.06[8] at 7-61 ("[A]n insolvent debtor receives value by paying an old obligation. For this reason, making a preference in good faith is not a fraudulent conveyance because value is exchanged by the cancellation of

-11-

## IV. *The Complaint Is Not Pled With Sufficient Particularity To Satisfy Rule 9(b).*

28. Even if the Complaint was based on an actionable legal theory, the Complaint would be subject to dismissal because its allegations do not satisfy the pleading requirements of Fed. R. Civ. P. 9(b), which apply to fraudulent transfer claims asserted in bankruptcy cases under Bankruptcy Rule 7009. *See In re Oakwood Homes Corp.*, 325 B.R. 696, 698 (Bankr. D. Del. 2005) ("There is no question that Rule 9(b) applies to adversary proceedings in bankruptcy which include a claim for relief under §§ 544 or 548, whether it is based upon actual or constructive fraud.") (citations omitted). Even the relaxed Rule 9(b) requirements that apply to such claims when asserted by a bankruptcy trustee require more than mere identification of the allegedly fraudulent transfers. *Id.* at 699 (dismissing fraudulent transfer claims where plaintiff "alleged no facts or other supporting information which would establish the fraudulent nature of [the] alleged transfers and has essentially recited only the statutory language of § 548(a) of the Code"); *In re Global Link Telecom Corp.*, 327 B.R. 711, 718 (Bankr. D. Del. 2005) (dismissing fraudulent transfer claim where complaint failed to allege, among other things, "the value of what was received" in the transfer).

29. Here, the Complaint fails to plead with any particularity a number of facts essential to demonstrating constructive fraud. Most glaringly, the Complaint fails to allege the value of what "Aventis" received from Aphton or the reasons why Aphton failed to receive "reasonably equivalent value" when the "Aventis" accepted satisfaction of the Debenture. Additionally, Count I of the Complaint, which purports to state a claim under section 544, is deficiently pled because it does not identify the elements of a claim under state law—or, for that

---

the antecedent debt."); 5 Collier on Bankruptcy (15th ed.), ¶ 547.02, at 547-11 ("In dividing [fraudulent transfers from preferences], the drafters of the Code intended to prevent any overlapping of the provisions relating to such matters, a policy continued from prior law."); Schwarcz, Rethinking Freedom of Contract: A Bankruptcy Paradigm, 77 Tex. L. Rev. at 592-93 ("History and policy" explain why a debtor's securing or payment of antecedent is deemed to be in exchange for reasonably equivalent value. "Historically, fraudulent conveyance law was intended to prevent fraud, and securing or paying a legitimate debt is not fraudulent. The rule may promote bankruptcy policy by allowing a troubled debtor the flexibility to secure or pay it debts in order to avoid default or reach an out-of-court settlement, thereby facilitating its rehabilitation.") (footnotes omitted).

matter, even refer to the purportedly applicable statutory provisions—and accordingly pleads no facts showing the Trustee is entitled to relief under those statutes. *See Global Link*, 327 B.R. at 718 (dismissing § 544 claim where complaint failed to identify "the applicable state law, the legal standard, or any relevant facts"). Accordingly, the Complaint should be dismissed as against the "Aventis" for the additional reason that the Complaint fails to satisfy the pleading standards of Rule 9(b).

## CONCLUSION

For the foregoing reasons, SP and API respectfully request that this Court enter an order dismissing Counts I - III of the Complaint with prejudice and granting such further and other relief as is just and equitable.

Dated: September 2, 2008
Wilmington, Delaware

_____
Garvan F. McDaniel (#4167)
BIFFERATO GENTILOTTI LLC
800 N. King Street, Plaza Level
Wilmington, DE 19801
Tel: (302) 429-1900
Fax: (302) 429-8600

– and –

LOWENSTEIN SANDLER PC
John K. Sherwood
Jeffrey A. Kramer
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400

*Counsel for Sanofi Pasteur Limited and Aventis Pharmaceuticals, Inc.*