## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| APHTON CORPORATION, | ) Case No. 06-10510 (CSS) |
| | ) |
| Debtor. | ) |
| | ) |
| _____ | ) |
| WAYNE WALKER, as Trustee of | ) |
| Aphton Corporation, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adv. Proc. No. 08-50636 (CSS) |
| | ) |
| SONAFI PASTEUR a/k/a AVENTIS, SF | ) |
| CAPITAL PARTNERS, HEARTLAND | ) |
| GROUP, INC., solely on behalf of the | ) |
| HEARTLAND VALUE FUND, and LEGG | ) |
| MASON PARTNERS FUNDAMENTAL | ) |
| VALUE FUND, INC. f/k/a SMITH BARNEY | ) |
| FUNDAMENTAL VALUE FUND, INC., | ) |
| | ) |
| Defendants. | ) |

## OPINION[1]

Garvan F. McDaniel
Bifferato Gentilotti LLC
800 N. King Street, Plaza Level
Wilmington, DE 19801
 -and-
John K. Sherwood
Jeffrey A. Kramer
Lowenstein Sandler PC

Leigh-Anne M. Raport
David B. Stratton
Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
 -and-

---

[1] "The court is not required to state findings or conclusions when ruling on a motion under Rule 12 . . . ." Fed. R. Bankr. P. 7052(a)(3). Accordingly, the Court herein makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

65 Livingston Avenue
Roseland, NJ 07068

Alan J. Lipkin
Paul W. Horan
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099

Counsel for Sanofi Pasteur Limited
and Aventis Pharmaceuticals, Inc.

Counsel for Legg Mason Partners
Fundamental Value Fund, a
series of Legg Mason Partners
Equity Trust and successor to
Legg Mason Partners
Fundamental Value Fund, Inc.,
SF Capital Partners, Ltd., and the
Heartland Group, Inc., solely on
behalf of the Heartland Value
Fund

Shannon D. Leight
Albert A. Ciardi, III
Joseph V. Bongiorno
Ciardi & Ciardi, P.C.
901 Market Street, Suite 700
Wilmington, DE 19801

Counsel for Wayne Walker as
Trustee for Aphton Corporation

Dated: January 27, 2010

Sontchi, J. _____

# **INTRODUCTION**

Before the Court are several motions brought by Sanofi Pasteur Limited

("SP") and Aventis Pharmaceuticals, Inc. ("Aventis Pharmaceuticals") (collectively,

"Aventis"),[2] SF Capital Partners ("SF Capital"), Heartland Group, Inc., solely on behalf

of the Heartland Value Fund and Heartland Value Fund, Inc. (collectively,

"Heartland"), and Legg Mason Partners Fundamental Value Fund, Inc. f/k/a Smith

---

[2] The Court shall refer to SP and Aventis as "Aventis" for the sake of efficiency. This is not a finding that the entities are legally related.

Barney Fundamental Value Fund, Inc. ("Smith Barney") (collectively, SF Capital, Heartland, and Smith Barney shall be referred to as the "Former Noteholders").

The Former Noteholders and Aventis seek to dismiss the First Amended Complaint of Wayne Walker as Trustee of Aphton Corporation to Avoid and Recover Transfers Pursuant to 11 U.S.C. § 544, 548 and 550 (the "Complaint"). The Complaint contains six counts. [3] Counts I through III set forth constructive fraudulent conveyance claims against Aventis. Counts V through VII set forth constructive fraudulent conveyance claims against the Former Noteholders. Aventis and the Former Noteholders argue that the Complaint fails to state a claim upon which relief can be granted.

The Former Noteholders have also filed a motion for sanctions pursuant to Federal Rule of Bankruptcy Procedure 9011. They argue that the actions of the Trustee's counsel were objectively unreasonable in filing and maintaining the original complaint, and that the Trustee's counsel took no action to dismiss voluntarily the original complaint or remedy its infirmities after being placed on notice of the Former Noteholders' position.

For the reasons set forth below, the Court will (i) grant Aventis's motion to dismiss; (ii) grant in part and deny in part the Former Noteholders' motion to dismiss; and (iii) deny the motion for sanctions.

---

[3] Count IV has been dismissed by stipulation between the Trustee and Adventis. *See* D.I. 24.

# JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (F) and (H).

# STATEMENT OF FACTS

## A.  Factual Background

### i.  Parties To This Dispute

Aphton Corporation (the "Debtor") is a biopharmaceutical company that researches, develops, and commercializes pharmaceutical products for the treatment of cancer and gastrointestinal disease.  The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in May, 2006.

Aventis Pharmaceuticals and SP are in the business of research, development and production of pharmaceuticals.  The Complaint asserts that SP is "also known as" Aventis, although the motion to dismiss asserts that they are separate legal entities.

The Former Noteholders and the Debtor were parties to a Purchase Agreement for certain notes.  Per the agreement, the Former Noteholders paid the Debtor $15 million in exchange for the Debtor issuing notes that bore an equivalent face value.

In early 1997, the Debtor entered into a Co-Promotion Agreement and License (the "Co-Promotion Agreement") with Connaught Laboratories Limited and its affiliated entities (collectively, "CLL").[4]  The Co-Promotion Agreement pertained to the Debtor's development of a non-toxic immunotherapy drug, known as *Insegia*, designed to treat certain types of cancer, and the collaboration between the Debtor and Aventis in the co-promotion, marketing, selling and distribution of products being developed by the Debtor, including *Insegia*.  The Co-Promotion Agreement also granted Aventis a non-exclusive license to manufacture the Debtor's products and to have the Debtor's products manufactured for it, while reserving the rights to promote, market, distribute and sell products on its own or in conjunction with Adventis.

Subsequent to the entry of the Co-Promotion Agreement, the Debtor and Aventis entered into two supply agreements (the "Supply Agreements") that required (i) Aventis to supply the Debtor with certain biological materials necessary for the Debtor's development of its products; and (ii) the Debtor to supply Aventis with the Debtor's products.

In 2002, the Debtor and Aventis entered into an agreement to restructure the Co-Promotion Agreement.[5]  Under the restructuring agreement, the parties agreed

---

[4]   The Trustee alleges that Aventis is an affiliate and/or successor of Pasteur Merieux Connaught ("PMC").  PMC is alleged to consist of the collective affiliate entities of CLL.

[5]   There is no evidence or allegation before the Court that a new co-promotion agreement was entered into between the parties.

to enter into a new co-promotion agreement under which the Debtor would grant Aventis an exclusive license related to the development, promotion, marketing, distribution or sale of any products. At the same time, the Debtor and Aventis entered into the Debenture Purchase Agreement in which the Debtor agreed to sell and Aventis agreed to purchase a convertible debenture in the principal amount of $3 million due December 19, 2007 (the "Debenture").

In February, 2005, the Debtor announced that *Insegia* had failed to meet the clinical benchmarks necessary for FDA approval.

In a letter dated April 27, 2005, Aventis demanded that the Debtor pay $3 million and all accrued interest pursuant to the Debenture. Aventis asserted redemption was mandatory because (as revealed in the Debtor's public filings) the Debtor had signed prohibited collaboration agreements. The Debtor redeemed the Debenture for $3 million in accordance with the terms of the Debenture Agreement (the "Redemption Payment") on August 4, 2005.

On November 2, 2005, SP (as successor-in-interest to CLL) and the Debtor memorialized an agreement concerning termination (the "Termination Agreement") of the Co-Promotion Agreement and the Supply Agreements. In the Termination Agreement, SP forgave a receivable due from the Debtor to SP for "conjugation services" in the amount of $1.8 million. The Termination Agreement contained a provision for the Debtor and SP to enter into a new supply agreement. It did not mention the Redemption Payment.

*The Debtor's Relationship With The Former Noteholders*

In March, 2003, the Debtor issued notes (the "Notes") to the Former Noteholders. The Former Noteholders paid the Debtor $15 million in exchange for Notes bearing an equivalent face value.[6] The Notes provided that the Former Noteholders were entitled to convert any portion of the outstanding principal balance, plus accrued interest, into shares of the Debtor's stock. The Notes further provided that, upon the occurrence of an event of default, the noteholders were entitled to redeem any portion of the Notes for cash equal to 110% of the principal amount, plus accrued and unpaid interest and any other amounts due.

Subsequent to the Redemption Payment, the Former Noteholders asserted that the Redemption Payment constituted an event of default under the securities purchase agreement and demanded redemption of the Notes. The Debtor and the Former Noteholders reached an agreement in November, 2005, wherein the Former Noteholders agreed to surrender the Notes in exchange for a total payment of $3 million in cash, the issuance of 10,000 shares of preferred stock and 2 million shares of common stock (the "Exchange Agreement Payment").

---

[6] The Former Noteholders assert that they paid $20 million. This discrepancy does not matter for the purposes of the Court's ruling.

In May, 2006, the Debtor filed its Chapter 11 case.  In March, 2007, the Court confirmed the Debtor's liquidating plan (the "Plan").  The Plan authorized the Trustee to pursue potential avoidance actions or litigation claims.

**B.    The Complaint**

In May, 2008, the Trustee commenced this adversary proceeding by filing a complaint[7] against both the Former Noteholders and Aventis.  The Complaint seeks to avoid the transfers from the Debtor to Aventis and from the Debtor to the Former Noteholders, pursuant to §§544 and 548 of the Bankruptcy Code; and to recover the value of the transfers from the Debtor to Aventis and the Debtor to the Former Noteholders, pursuant to §550 of the Bankruptcy Code.

Counts I and V of the Complaint assert that the Trustee is a lien creditor pursuant to §544(b) of the Bankruptcy Code and that the $3 million transferred to Aventis  and the $3 million transferred to the Former Noteholders were each fraudulent transfers under the "Pennsylvania and/or Delaware Uniform Fraudulent Transfer Act."[8]

---

[7]  The complaint was subsequently amended (D.I. 5) (the amended complaint shall be referred to herein as the "Complaint").

[8]  Count I asserts:

> 35.  The Plaintiff repeats and re-alleged the allegations contained in all of the proceeding paragraphs of this Complaint as if the same were set forth herein.

> 36.  Pursuant to Section 544(b) of the Bankruptcy Code, the Plaintiff, in his capacity as Trustee, may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is

Counts II and VI of the Complaint assert fraudulent conveyance claims pursuant to §548 of the Bankruptcy Code.  Both counts assert that (i) the transfers were made within two years of the petition date;  (ii) the Debtor received less than reasonably equivalent value for the transfer; and (iii) the transfers occurred at a time when the Debtor was insolvent.

Specifically, in Count II the Trustee argues that (i) the transfer from the Debtor to Aventis of $3 million pursuant to the Termination Agreement, and (ii) the Debtor's loss of the right to receive biological agents, was not reasonably equivalent to (a) the return of its marketing rights for *Insegia*, and (b) forgiveness of $1.8 million dollar debt owed by the Debtor to Aventis. [9]

---

voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of the Bankruptcy Code or that is not allowable only under section 502(e) of the Bankruptcy Code.

37.     Under either the Pennsylvania and/or Delaware Uniform Fraudulent Transfer Act, Plaintiff can avoid the Transfer(s) that comprise the $3 million in funds that were transferred to Defendant Sanofi.

Count V repeats these allegations against the Former Noteholders asserting in paragraph 60 that the Plaintiff seeks to avoid the "Transfer(s) that comprise the $3 million funds that were transferred to the Defendant Noteholders."

[9]  Count II of the Complaint asserts:

39.  The transfer of $3 million dollars from Aphton to Aventis; as well as the transfer of the property rights, were made pursuant to the attached Termination Agreement dates November 2, 2005, less than seven months before the petition date.  A true and correct copy of the Termination Agreement, the terms of which are incorporated herein by reference, is attached hereto as Exhibit "H."

40.     The attached Form 10-K filed by Aphton with the Securities Exchange Commission for the fiscal year ending December 31, 2005 shows that Aphton was insolvent as of the date of the Termination Agreement.  A true and correct copy of the Form 10-K for the year ending December 31, 2005, the terms of which are incorporated herein by reference, is attached hereto as Exhibit "I."

In Count VI, the Trustee asserts that (i) the transfer of $3 million from the Debtor to the Former Noteholders; and (ii) the transfer of the Debtor's stock to the Former Noteholders, was not reasonably equivalent to (a) the cancellation of the Notes.[10]

---

41. Aphton lost the rights to continue to receive the biological agents; as well as, transferred $3 million in cash pursuant to the Termination Agreement. Aphton also agreed to pay a 4% royalty on all future sales of *Insegia* to Aventis. *See* Exhibit "H."

42. Aventis returned the marketing rights to *Insegia* and forgave $1.8 million dollars in debt owed by Aphton pursuant to the Termination Agreement. *See* Exhibit "H."

43. The Debtor received less than a reasonably equivalent value in exchange for the transfer and/or obligation.

44. Aphton was insolvent at the time of the transfer.

45. The Termination Agreement was executed seven (7) months prior to Aphton's petition for bankruptcy. *See* Exhibit "H."

[10] The Count VI of the Complaint asserts:

62. The transfer of $3 million dollars from Aphton to the [Former] Noteholders; as well as the issuance of 10,000 shares of preferred stock and 2 million shares of common stock, were made pursuant to the attached Exchange Agreement dated November 23, 2005, less than seven months before the petition date. See Exhibit "G."

63. The attached Form 10-K filed by Aphton with the Securities Exchange Commission for the fiscal year ending December 31, 2005 shows that Aphton was insolvent as of the date of the Exchange Agreement. A true and correct copy of the Form 10-K for the year ending December 31, 2005, the terms of which are incorporated herein by reference, is attached hereto as Exhibit "I."

64. Aphton lost 10,000 shares of preferred stock and 2 million share of common stock; as well as the transfer of $3 million in cash pursuant to the Exchange Agreement Agreement [sic].

65. The Debtor received less than a reasonably equivalent value in exchange for the transfer and/or obligation.

66. Aphton was insolvent at the time of the transfer.

67. The Exchange Agreement was executed seven (7) months prior to Aphton's petition for bankruptcy. See Exhibit "G."

Counts III and VII of the Complaint seek recovery of each of the alleged fraudulent transfers pursuant to §550 of the Bankruptcy Code.

### C. Procedural Background

In June, 2008, the Former Noteholders sent a letter to the Trustee's counsel. The letter cautioned that the Former Noteholders believed that the Complaint failed to state a claim against them and requested that the Trustee voluntarily dismiss, with prejudice, the Complaint against the Former Noteholders. The letter also stated that if the Trustee failed to dismiss the Complaint that the Former Noteholders would move to dismiss the Complaint and seek sanctions for fees and expenses incurred in responding to it. The Trustee did not reply to this letter

In July, 2008, the Former Noteholders filed a motion to dismiss the claims asserted against them in the Complaint. The Former Noteholders also filed a motion for sanctions against the Trustee pursuant to Bankruptcy Rule 9011. In September, 2008, SP and Aventis filed a motion to dismiss the claims asserted against them in the Complaint.[11] Briefing is now complete and this matter is ripe for decision.

---

[11] In October, 2008, the Trustee filed a stipulation of dismissal as to Court IV of the Complaint.

# LEGAL DISCUSSION

## A. Motions to Dismiss

### i. Standards of Review

#### a. The Standard of Review When Evaluating Complaints Asserting Fraud.

Complaints asserting claims for fraud must meet a heightened pleading standard. Federal Rule of Civil Procedure Rule 9(b)[12] requires these complaints to set forth facts with sufficient particularity to apprise the defendant of the charges against him so that he may prepare an adequate answer.[13] To provide fair notice, the complaint must go beyond merely quoting the relevant statute.[14] The Third Circuit explained the purpose of Rule 9(b)'s particularity requirements as follows:

> Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. It is certainly true that allegations of "date, place or time" fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting

---

[12] Federal Rule of Civil Procedure 9(b) is made applicable to this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7009. *See also In re Oakwood Homes Corp.*, 325 B.R. 696, 698 (Bankr. D. Del. 2005) ("There is no question that Rule 9(b) applies to adversary proceedings in bankruptcy which include a claim for relief under §§ 544 or 548, whether it is based upon actual or constructive fraud." (citations omitted)).

[13] *See Global Link Liquidating Trust v. Avantel, S.A. (In re Global Link Telecom Corp.)*, 327 B.R. 711, 718 (Bankr. D. Del. 2005). *See also Iqbal*, 129 S. Ct. at 1954 ("Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard. It does not give him license to evade the less rigid – though still operative – strictures of Rule 8.")

[14] *Avantel*, 327 B.R. at 718. *See also Burtch v. Dent (In re Circle Y of Yoakum, Texas)*, 354 B.R. 349, 356 (Bankr. D. Del. 2006).

precision and some measure of substantiation into their
allegations of fraud.[15]

A trustee is generally afforded greater liberality in pleading fraud, since
he is a third-party outsider to the debtor's transactions.[16] Nevertheless, these relaxed
Rule 9(b) requirements require the trustee to do more than merely identify the allegedly
fraudulent transfers.[17]

> b. *The Standard Regarding Sufficiency of Pleadings When Evaluating a Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted.*

A motion under Rule 12(b)(6)[18] serves to test the sufficiency of the factual
allegations in the plaintiff's complaint.[19] "Standards of pleading have been in the
forefront of jurisprudence in recent years."[20] With the Supreme Court's recent decisions
in *Bell Atlantic Corp. v. Twombly*[21] and *Ashcroft v. Iqbal*,[22] "pleading standards have

---

[15] *Seville Indus. Mach. Corp. v. Southernmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

[16] *Global Link*, 327 B.R. at 717. *Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 544 (Bankr. D. Del. 2009) ("This is because of the trustee's 'inevitable lack of knowledge concerning acts of fraud previously committed against the debtor, a third party.'" (*citing Schwartz v. Kursman (In re Harry Levin, Inc. t/a Levin's Furniture)*, 175 B.R. 560, 567-68 (Bankr. E.D. Pa. 1994)). *See also Oakwood Home*, 325 B.R. at 698.

[17] *Oakwood Homes*, 325 B.R. at 699 (dismissing fraudulent transfer claims where plaintiff "alleged no facts or other supporting information which would establish the fraudulent nature of [the] alleged transfers and has essentially recited only the statutory language of § 548(a) of the Code"); *Global Link*, 327 B.R. at 718 (dismissing fraudulent transfer claim where complaint failed to allege, among other things, "the value of what was received" in the transfer).

[18] Federal Rules of Civil Procedure 8(a) and 12(b)(6) are made applicable to this adversary proceeding pursuant to Federal Rules of Bankruptcy Procedure 7008 and 7012, respectively.

[19] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) ("The pleader is required to set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist." (citations omitted)).

[20] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 209 (3d Cir. 2009).

[21] 550 U.S. 544 (2007).

[22] 129 S. Ct. 1937 (2009).

seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss."[23]

In *Iqbal*, the Supreme Court makes clear that the *Twombly* "facial plausibility" pleading requirement applies to all civil suits in the federal courts.[24] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to survive a motion to dismiss.[25] Rather, "all civil complaints must now set out sufficient factual matter to show that the claim is facially plausible."[26] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[27] Determining whether a complaint is "facially plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience

---

[23] *Fowler*, 578 F.3d at 210.

[24] *See Fowler*, 578 F.3d at 210.

[25] *Iqbal*, 129 S. Ct. at 1949. *See also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) (citations omitted); *Bartow v. Cambridge Springs SCI*, 285 Fed. Appx. 862, 863 (3d Cir. 2008) ("While facts must be accepted as alleged, this does not automatically extend to bald assertions, subjective characterizations, or legal conclusions.); *General Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 333 (3d Cir. 2001) ("Liberal construction has its limits, for the pleading must at least set forth sufficient information for the court to determine whether some recognized legal theory exists on which relief could be accorded the pleader. Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss. While facts must be accepted as alleged, this does not automatically extend to bald assertions, subjective characterizations, or legal conclusions." (citations omitted)).

[26] *Fowler*, 578 F.3d at 210 (internal quotations omitted). *See also Iqbal*, 129 S. Ct. 1950 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *Buckley v. Merrill Lynch & Co. (In re DVI, Inc.)*, 2008 Bankr. LEXIS 2338 (Bankr. D. Del. Sept. 16, 2008) ("Rule 8(a) requires a showing rather than a blanket assertion of an entitlement to relief. We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only fair notice, but also the grounds on which the claim rests."(citations omitted)).

[27] *Iqbal*, 129 S. Ct. at 1949.

and common sense.[28]  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but not shown - that the pleader is entitled to relief."[29]

After *Iqbal*, the Third Circuit has instructed this Court to "conduct a two-part analysis.  First the factual and legal elements of a claim should be separated.  The [court] must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."[30]  The court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief."[31]

---

[28] *Iqbol*, 129 S. Ct. at 1950.  "It is the conclusory nature of [plaintiff's] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." *Id*. at 1951.

[29] *Id*. at 1950 (internal citations and quotations omitted).

[30] *Fowler*, 578 F.3d at 210-11.  *See also Twombly*, 550 U.S. at 555 (holding that a court *must* take the complaint's allegations as true, no matter how incredulous the court may be); *Iqbal*, 129 S. Ct. at 1949-50 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . When there are well-plead factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *Winer Family Trust v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007); *Carino v. Stefan*, 376 F.3d 156, 159 (3d Cir. 2004).  The Court may also consider documents attached as exhibits to the Amended Complaint and any documents incorporated into the Amended Complaint by reference.  *In re Fruehauf Trail Corp.*, 250 B.R. 168, 183 (Bankr. D. Del. 2000) (*citing PBGC v. White*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  "[I]f the allegations of [the] complaint are contradicted by documents made a part thereof, the document controls and the Court need not accept as true the allegations of the complaint."  *Sierra Invs., LLC v. SHC, Inc. (In re SHC, Inc.)*, 329 B.R. 438, 442 (Bankr. D. Del. 2005).  *See also Sunquest Info. Sys., Inc. v. Dean Whitter Reynolds, Inc.*, 40 F. Supp. 2d 644, 649 (W.D.Pa. 1999) ("In the event of a factual discrepancy between the pleadings and the attached exhibit, the exhibit controls." (citations omitted)).

[31] *Fowler*, 578 F.3d at 211 (internal quotations omitted) ("[A] complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts." (citation omitted)).  "The plaintiff must put some 'meat on the bones' by presenting sufficient factual allegations to explain the basis for its claim."  *Buckley v. Merrill Lynch & Co., Inc. (In re DVI, Inc.)*, 2008 Bankr. LEXIS 2338, at *13 (Bankr. D. Del. Sept. 16, 2008).

*The Plausibility of Plaintiff's Claims for Relief.*

    a. *Counts I And V Of the Complaint Are Not Pled With Sufficient Particularity To Satisfy Rule 9(b).*

As a threshold matter, the Court must decide whether the Complaint meets the heightened pleading standards of Rule 9(b).[32]  Allegations of "date, place or time" fulfill the function of Rule 9(b) by placing the defendants on notice of the precise misconduct with which they are charged.[33]  The defendants assert that the Counts I and V of the Complaint are deficiently pled because they do not identify the elements of a claim under state law or even refer to the purportedly applicable statutory provisions.

Counts I and V of the Complaint merely plead that the Trustee is a lien creditor pursuant to §544 of the Bankruptcy Code, asserting that the $3 million transfer to Aventis and the $3 million transfer to the Former Noteholders, respectively, violate the "Pennsylvania and/or Delaware Uniform Fraudulent Transfer Act." [34]  The Trustee does not recite the elements of the Pennsylvania and/or Delaware Uniform Fraudulent Transfer Act, nor does he allege the specific facts that meet those elements.  Rather, these counts are "blanket assertions" and do not state the ground on which these claims

---

[32] Rule 9(b) states as follows:

> (b) Fraud or Mistake; Conditions of Mind.  In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intend, knowledge, and other conditions of a person's mind may be alleged generally.

Fed.R.Civ.P. 9(b).

[33] *Seville*, 742 F.2d at 791.

[34] *See supra* note 8.

rest.[35]  Dismissal for failure to plead Counts I and V with requisite specificity is mandated.[36]

> b. *Counts II and VI of Complaint Are Pled With Sufficient Particularity To Satisfy Rule 9(b).*

Count II[37] asserts transfers occurred while the Debtor was insolvent and were not "reasonably equivalent" in value.  Specifically, the Trustee asserts that (i) the transfer from the Debtor to Aventis of $3 million pursuant to the Termination Agreement, and (ii) the Debtors' loss of the rights to continue to receive biological agents, were not reasonably equivalent in value to (a) the return of its marketing rights for *Insegia*, and (b) forgiveness of $1.8 million dollar debt owed by the Debtor to Aventis.  The Trustee asserts the legal elements of a fraudulent conveyance and alleges specific facts in making the claim.  The Trustee also attaches documents in support of his claim.

Count VI[38] asserts that there was a constructive fraudulent transfer to Aventis, which occurred while the Debtor was insolvent and was not "reasonably

---

[35]  *DVI, Inc.*, 2008 Bankr. LEXIS 2338 at *7 ("To provide fair notice, the complainant must go beyond merely parroting statutory language." (citation omitted)); *Seville*, 742 F.2d at 791 (requiring that a complaint contain such assertions as "date, place or time"); *Oakwood Homes*, 325 B.R. at 698-699 ("Even applying the liberal or relaxed standard of Rule 9(b) for bankruptcy trustees, it is evident in this proceeding that Plaintiff has failed to pled with sufficient particularity to comply with the Rule.").

[36]  Federal Rule of Civil Procedure 15(a), as made applicable to adversary actions pursuant to Federal Rule of Bankruptcy Procedure 7015, provides that "leave [to amend] shall be freely given when justice so requires."  *See also Global Link*, 327 B.R. at 718.  The Court need not decide whether the Trustee should be granted leave to file an amended complaint as the Trustee did not request such relief in his responsive pleadings.

[37]  *See supra* note 9.

[38]  *See supra* note 10.

equivalent" in value. Specifically, (i) the transfer of $3 million from the Debtor to the Former Noteholders; and (ii) the transfer of the Debtor's stock to the Former Noteholders, in return for (a) cancellation of the Notes was not a reasonably equivalent exchange of value. Again, the Trustee states the legal elements of a fraudulent conveyance and alleges specific facts in making the claim. The Trustee also attaches documents in support of his claim. Aventis and the Former Noteholders argue that the Complaint fails to allege the value of what the defendants received from the Debtor or the reasons why the Debtor failed to receive "reasonably equivalent" value from the Redemption Payment and/or the Exchange Agreement Payment.

The Court concludes that Counts II and VI are plead with allegations of "date, place or time" and therefore fulfill the function of Rule 9(b) by placing the defendants on notice of the misconduct with which they are charged.[39] The Complaint identifies the alleged constructively fraudulent transfers by date[40] and face amount,[41] and it alleges that "[the] Debtor received less than a reasonably equivalent value in exchange for the transfer[s] and/or obligation[s]." On its face, the Complaint describes the circumstances surrounding the transfers and it alleges that the Debtor was insolvent

---

[39] *Seville*, 742 F.2d at 791.

[40] November 2, 2005, for the Redemption Payment and November 23, 2005, for the Exchange Agreement Payment.

[41] $3 million to Aventis and $3 million, 10,000 shares of preferred stock and 2 million shares of common stock to the Former Noteholders.

at the time of both transfers. Therefore, the Court finds that Counts II and VI of the Complaint complies with Rule 9(b).

   c. *The Complaint Is Not Facially Plausible To Avoid And Recover The Redemption Payment, But It Is Facially Plausible To Avoid The Exchange Agreement Payment.*

   **(a)** **Bankruptcy Code Sections 548 and 550**

The Trustee argues that the Redemption Payment and the Exchange Agreement Payment were constructively fraudulent. Constructive fraud claims contain two elements: (i) whether the debtor was insolvent when the transfer was made,[42] and (ii) whether the debtor received reasonably equivalent value for the transfers.[43]

Of the three critical terms contained in section 548 ("reasonably, "equivalent," and "value"), only "value" is defined.[44] The Code provides that "'value' means property, or satisfaction of or securing of a present or antecedent debt of the debtor . . . ."[45]

The term "reasonably equivalent value" is not defined by the Bankruptcy Code. Congress left to the courts the task of setting forth the scope and meaning of this term, and courts have rejected the application of any fixed mathematical formula to

---

[42] 11 U.S.C. §548(a)(1)(B)(ii)(I).

[43] 11 U.S.C. §548(a)(1)(B)(i).

[44] *Pension Transfer Corp. v. Beneficiaries Under the Third Amendment to Fruehauf Trailer Corp. Ret. Plan No. 003*, 319 B.R. 76, 86 (D. Del. 2005) (*citing BFP v. Resolution Trust Corp.*, 511 U.S. 531, 128 L. Ed. 2d 556, 114 S. Ct. 1757 (1994)).

[45] 11 U.S.C. § 548(d)(2)(A).

determine reasonable equivalence.[46]   As the Third Circuit has noted, "a party receives

reasonably equivalent value for what it gives up if it gets 'roughly the value it gave.'"[47]

Courts looks to the "totality of the circumstances" of the transfer to determine whether

"reasonably equivalent" value was give.[48]   Courts include the following factors: "(i) the

'fair market value' of the benefit received as a result of the transfer, (ii) 'the existence of

an arm's-length relationship between the debtor and the transferee,' and (3) the

transferee's good faith."[49]   Courts have held that when a transfer is made to pay an

antecedent debt, the transfer may not be set aside as constructively fraudulent.[50]

Section 550 provides that "to the extent that a transfer is avoided under

section 544 . . . [or] 548 . . . of this title, the trustee may recover . . . the property

---

[46] *Peltz v. Hatten*, 279 B.R. 710, 736 (D. Del. 2002).

[47] *VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 631 (3d Cir. 2007) (*citing Pension Transfer Corp. v. Beneficiaries under the Third Amendment to Fruehauf Trailer Corp. Retirement Plan No. 003 (In re Fruehauf Trailer Corp.*, 444 F.3d 203, 213 (3d Cir. 2006)).  *See also Fedders N. Am., Inc.*, 405 B.R. at 546-547.

[48] *Fedders N. Am., Inc.*, 405 B.R. at 547

[49] *Fedders N. Am., Inc.*, 405 B.R. at 547 (*quoting Fruehauf Trailer*, 444 F.3d at 213).

[50] *See, e.g., In re APF Co.*, 308 B.R. 183 (Bankr. D. Del. 2004) (Trustee could not state § 548 constructive fraud claim because "the payments made on the promissory note were made for value, satisfaction of an antecedent debt"); *Sierra*, 329 B.R. 438; *In re Rosen Auto Leasing, Inc.*, 346 B.R. 798 (8th Cir. B.A.P. 2006); *In re First Alliance Mortgage Co.*, 298 B.R. 652 (C.D. Cal. 2003); *In re Carrozzella & Richardson*, 302 B.R. 415 (Bankr. D. Conn. 2003); *In re Montalvo*, 333 B.R. 145 (Bankr. W.D. Ky. 2005) (husband giving wife money to meet ordinary household expenses was in satisfaction of his legal obligation to support his wife; transfer was for reasonably equivalent value as a matter of law); *In re Advanced Telecomm. Network, Inc.*, 321 B.R. 308 (Bankr. M.D. Fla. 2005) (money paid in an arm's-length transaction to settle litigation is an exchange for reasonably equivalent value); *Atlanta Shipping Corp. v. Chemical Bank*, 818 F.2d 240, 249 (2d Cir. 1987) ("In general, repayment of an antecedent debt constitutes fair consideration unless the transferee is an officer, director or major shareholder of the transfer."); *In re Trace Int'l Holdings, Inc.*, 301 B.R. 801, 805 (Bankr. S.D.N.Y. 2003) ("Past consideration is good consideration. An 'antecedent debt' satisfies the requirement of fair consideration and reasonably equivalent value, and putting aside transfers to insiders, the payment of an existing liability is not fraudulent."); *In re B.Z. Corp.*, 34 B.R. 546, 548 (Bankr. E.D. Pa. 1983) ("The loan payments made [by the debtor] are not avoidable since under § 548(d)(2)(A) the payments were made for value, i.e., 'the satisfaction of . . . [an] antecedent debt of the debtor.'").

transferred . . . from the initial transferee of such transfer or the entity for whose benefit such transfer was made."[51]   Under section 550(b)(1), a trustee may not recover from "a transferee that takes for value, including satisfaction . . . of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided."[52]

### (b) *The Redemption Payment/Termination Agreement*

There are two elements that must be facially plausible in order to survive a motion to dismiss claims for constructive fraudulent transfer: (i) the debtor's insolvency;[53] and (ii) whether the debtor received reasonably equivalent value for the transfer.[54]

The Complaint asserts that the Debtor was insolvent at the time of the "transfer" and attached the Debtor's Form 10-K filed for the fiscal year ending December 31, 2005, in support of the assertion.[55]   The Court must accept as true all allegations contained in the complaint,[56] which includes the Trustee's allegation of insolvency must be accepted solely for the purposes of evaluating the motion to dismiss.   The Complaint further asserts that the Redemption Payment[57] was linked

---

[51]  11 U.S.C. § 550(a)(1).

[52]  11 U.S.C. § 550(b)(1).

[53]  *See* 11 U.S.C. §548(a)(1)(B)(ii)(I).

[54]  *See* 11 U.S.C. §548(a)(1)(B)(i).

[55]  Aventis demanded the redemption of the Debenture in April 2005, and the Redemption Payment was made in August 2005.

[56]  *Iqbal*, 129 S.Ct. at 1949.

[57]  Aventis demanded the redemption of the Debenture in April 2005.

to the Termination Agreement,[58] and that Aphton received less than reasonably equivalent value for this "transfer and/or obligation."

Aventis, in its motion to dismiss, argues that the Redemption Payment and the Termination Agreement are unrelated events "involving two separate and distinct corporate entities and different contractual agreements among different parties." Aventis further argues that the $3 million was an "antecedent debt" under the Debenture and therefore cannot be constructively fraudulent. Furthermore, Aventis argues that the Complaint is an attempt to pursue a time-barred preference claim.

The Court finds that the allegations in the Complaint are contradicted by the documents attached and incorporated therein.[59] The demand for redemption occurred in April, 2005, and, on its face, it was in response to a recently signed collaboration agreement the Debtor entered into with a third-party.[60] The Complaint

---

[58] Paragraph 25 of the Complaint states as follow:

> In exchange for the return of its rights to market the non-FDA approved *Insegia* and the forgiveness of $1.8 million receivable due to Aventis, Aphton repaid the full $3 million demanded under the Debenture (the "Transfer"); as well as, giving up the right to continue to receive the biological agents necessary to continue its work with *Insegia*.

[59] *SHC, Inc.*, 329 B.R. at 442 ("[I]f the allegations of [the] complaint are contradicted by documents made a part thereof, the document controls and the Court need not accept as true the allegations of the complaint.").

[60] The redemption demand states as follows:

> It is our understanding that Aphton has recently signed a collaboration agreement with Xoma Ltd. as well as a collaboration and licensing agreement with Daiichi Pure Chemicals. Under the terms of Section 3(c) of the Debenture, Aphton must redeem the Debenture within 30 days for cash or securities. Aventis prefers to have the entire principal of the Debenture in the amount of $3,000,000 plus all accrued interest redeemed for cash.

does not assert when the Redemption Payment was made or how the two transactions relate (besides being between related entities).[61]  Furthermore, the Complaint blurs the Redemption Payment and the Termination Agreement with facts that are not supported by the attachments to the Complaint.  For example:

> 39.    The transfer of $3 million dollars from Aphton to Aventis; as well as the transfer of the property rights, were made pursuant to the attached Termination Agreement dates November 2, 2005, less than seven months before the petition date.  A true and correct copy of the Termination Agreement, the terms of which are incorporated herein by reference, is attached hereto as Exhibit "H."

However, the Termination Agreement[62] does not refer to a $3 million transfer nor does it refer to the Debenture or the Redemption Payment.  The Complaint then continues:

> 41.  Aphton lost the rights to continue to receive the biological agents; as well as, transferred $3 million in cash pursuant to the Termination Agreement.    Aphton also agreed to pay a 4% royalty on all future sales of *Insegia* to Aventis.  *See* Exhibit "H."

Again, the Complaint is alleging that the Termination Agreement provides for a transfer of $3 million in cash.  However, the Termination Agreement does not indicate a $3 million transfer, nor does the Complaint allege any facts that connect the

---

[61]  In Aventis' motion to dismiss, Aventis alleges that the payment occurred on August 4, 2005.

[62]  In fact, this is the first time the Complaint refers to the "Termination Agreement", which is undefined. However, since this paragraph refers to the agreement dated November 2, 2005, and attached as Exhibit H to the Complaint, the Court will infer that the Trustee is referring to the transaction whereby the Co-promotion Agreement and the Supply Agreements were terminated in exchange for, among other things, forgiveness of an approximately $1.8 million receivable.

Termination Agreement and the Redemption Agreement other than alleging that the transactions were both with "Aventis."

Finally, the Complaint continues:

> 43. The Debtor received less than a reasonably equivalent value in exchange for the transfer and/or obligation.

The Court is puzzled by this allegation – it is unclear whether the Trustee is seeking to avoid the Redemption Payment or the Termination Agreement. The allegations of the Complaint are contradicted by documents incorporated therein.[63] Therefore, the Court finds that the document controls and the Court need not accept as true the allegations of the Complaint.[64] Furthermore, the Complaint lacks sufficient factual allegations to determine which transaction was less than reasonably equivalent value. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[65] The Court is unable to draw reasonable inferences from these allegations.[66] In fact, the Court is unsure as to which "transfer and/or obligation" is at issue in Count II; as such has not plead sufficient facts for the Court to infer, even taking all the factual allegations

---

[63] *SHC, Inc.*, 329 B.R. at 442.

[64] *See SHC, Inc.*, 329 B.R. at 442.

[65] *Iqbal*, 129 S. Ct. at 1949.

[66] *See, e.g., Iqbal*, 129 S. Ct. at 1949.

as true,[67] that there is a possibility of misconduct.[68]  As such Count II of the Complaint will be dismissed.

Furthermore, the Court will dismiss Count III of the Complaint which is based on §550[69] against Aventis.  This section is inapplicable because the §548 claim (Count II) has been dismissed.

### (c)  Exchange Agreement Payment

As set forth above, there are two elements that must be deemed facially plausible in order to survive a motion to dismiss a claim for constructive fraudulent transfer: (i) the debtor's insolvency;[70] and (ii) whether the debtor received reasonably equivalent value for the transfer.[71]  The Complaint asserts that the Debtor was insolvent at the time of the "transfer" and attached the Debtor's Form 10-K filed for the fiscal year ending December 31, 2005, in support of this element of a constructive fraudulent transfer.[72]  The Court must accept as true all allegations contained in the complaint.[73]

---

[67]  *See, e.g., Fowler*, 578 F.3d at 210-11.  *See also Twombly*, 550 U.S. at 555 (holding that a court *must* take the complaint's allegations as true, no matter how incredulous the court may be); *Iqbal*, 129 S. Ct. at 1949-50.

[68]  *See, e.g., Iqbal*, 129 S. Ct. at 1950.  "It is the conclusory nature of [plaintiff's] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." *Id.* at 1951.

[69]  11 U.S.C. §550(a) states, in part:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section . . . 548 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property . . .

[70]  *See* 11 U.S.C. §548(a)(1)(B)(ii)(I).

[71]  *See* 11 U.S.C. §548(a)(1)(B)(i).

[72]  The Redemption Payment was made subsequent to the Aventis' demand for the redemption of the Debenture in April 2005.

[73]  *Iqbal*, 129 S.Ct. at 1949.

The Trustee's allegation of insolvency must be accepted solely for the purposes of evaluating the motion to dismiss. The Complaint then continues to assert that the transfer[74] of the following: (i) $3 million, (ii) 10,000 shares of preferred stock, and (iii) two (2) million shares of common stock from Aphton to the Former Noteholders was *not* reasonably equivalent value to the surrender of Notes with a face-value of $15 million.[75]

In their motion to dismiss, the Former Noteholders argue that (i) the transfers were made to satisfy an antecedent debt; (ii) reasonably equivalent value was made in the Exchange Agreement; (iii) the action is a disguised preference action and, therefore, is inappropriate; and (iv) the Exchange Agreement was a "settlement payment" under §546(e). These arguments are addressed *seriatim*.

The Code provides that value means "*satisfaction of . . . antecedent debt of the debtor . . . .*"[76] Courts have held that when a transfer is made to pay an antecedent debt, the transfer may not be set aside as constructively fraudulent.[77] The Former Noteholders argue that the Exchange Agreement Payment was made in satisfaction of Aphton's antecedent debt as reflected by the Notes. The Court finds that it is

---

[74] This exchange was made pursuant to the Exchange Agreement, dated November 23, 2005, attached to the Complaint as Exhibit G.

[75] The Court acknowledges that the Former Noteholders assert that the face-value of the Notes was $20 million; however, in the posture of reviewing the motion to dismiss, the Court must take the Complaint's allegations as true. *See Twombly*, 550 U.S. at 555.

[76] 11 U.S.C. § 548(d)(2)(A) (emphasis added).

[77] *See, e.g., supra* note 50.

inappropriate, at this time, to consider whether the Exchange Payment was, in fact, satisfaction of antecedent debt. This Court may only consider whether the Complaint is facially plausible, and cannot, at this time, consider possible defenses to the allegations in the Complaint.

As the Complaint alleges that Aphton was insolvent at the time of the Exchange Agreement Payment, it must follow that the Notes and the shares, both common and preferred, were also worthless. As such, it is facially plausible that there was not reasonably equivalent value in the Exchange Agreement Payment in which Aphton also provided $3 million in cash. The value given by the Former Noteholders to the Debtors is in dispute and not appropriate for determination on a motion to dismiss. "All that is needed at this stage is an allegation that there was a transfer for less than reasonably equivalent value at a time when the Debtors were insolvent."[78] These allegations have been made in Count VI of the Complaint.

The Former Noteholders also assert in their motion to dismiss that the Trustee is seeking to recover a disguised preference payment rather than a fraudulent transfer, and, as such, the Complaint ought to be dismissed. Courts have held that there is a distinction between a preference[79] and a fraudulent transfer and a time-barred

---

[78] *DVI, Inc.*, 2008 Bankr. LEXIS 2338, at *27.

[79] Under the Bankruptcy Code, a preference is only voidable in two circumstances: first, if it is granted within 90 days of the debtor's filing for bankruptcy; and second, if it is granted within one year of filing and if "such creditor at the time of such transfer was an insider." *See* 11 U.S.C. § 547(b)(4). As states in the facts, the Exchange Agreement Payment was given well over 90 days before the filing and, although it was given within one year, the Trustee made no allegation that the Former Noteholders were insiders. Thus, the Trustee may only pursue a fraudulent conveyance claim.

preference action may not be disguised as a fraudulent transfer action.[80]  As stated above, a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"[81]  Although the Trustee may have been able to plead the Exchange Agreement Payment as a preferential transfer had been made within the 90 days prior to the petition date, it does not limit the Trustee's ability to assert other recovery theories such as fraudulent conveyance, if indicated.  In the Complaint, the Trustee has asserted the elements of a fraudulent transfer and facts, taken as true, that establish a facially plausible cause of action.  As such the Court will not dismiss the Count VI of the Complaint on the grounds that it is a disguised preferential transfer.

Lastly, the Former Noteholders argue that the Exchange Agreement Payment was a "settlement payment" under §546(e) of the Bankruptcy Code.[82]  Under

---

[80]  *See, e.g., Boston Trading Group, Inc. v. Burnazos*, 835 F.2d 1504, 1509 (1st Cir. 1987) (The First Circuit held that under Massachusetts state law a preference "is not a fraudulent conveyance."  "The basic object of fraudulent conveyance law is to see that the debtor used his limited assets to satisfy some of his creditors; it normally does not try to choose among them."); *Geron v. Palladin Overseas Fund. Ltd (In re AppliedTheory Corp.)*, 330 B.R. 362, 363 n.2 (S.D.N.Y. 2005) (affirming dismissal of a fraudulent transfer claim); *In re Sharp Int'l Corp.*, 302 B.R. 760, 780 (E.D.N.Y. 2003) (finding that "the fundamental principle that a preference -- a payment by an insolvent debtor satisfying debts to one creditor at the expense of others -- is not a fraudulent conveyance. *See G. Glenn, Fraudulent Conveyances and Preferences* § 289 (1940) ("If there is one point more ungrudgingly accepted than others, it is that a preferential transfer does not constitute a fraudulent conveyance.")"); *Pereira v. Dow Chem. Co. (In re Trace Int'l Holdings, Inc.)*, 301 B.R. 801, 805-06 (Bankr. S.D.N.Y. 2003) ("Nevertheless, if there is in our law one point which is more ungrudgingly accepted than others, it is that the preferential transfer does not constitute a fraudulent conveyance." (*citing*, 1 Garrard Glenn, *Fraudulent Conveyances and Preferences* § 289, at 488 (rev. ed. 1940)).

[81]  *Twombly*, 550 U.S. at 556.

[82]  Section 546(e) states:

> Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(B) of this title, the trustee may not avoid a transfer that is a a margin payment, as defined in section 101, 741, or 761 of this title, or  settlement payment as

that section:  (1) a settlement payment (as defined in §741(8));[83]  (2) by, to or for the benefit of a financial institution; and (3) prior to the commencement of the case is a "settlement payment" entitled to the safe harbor.  Section 546(e) was enacted to protect the settlement and clearing systems for stock purchases and sales.[84]  The Third Circuit Court has held that the statutory definition of "settlement payment" is "extremely broad."[85]  The Court explained: "a settlement payment [under 546(e)] is generally the transfer of cash or securities made to complete a securities transaction."[86]  Furthermore, the Bankruptcy Code defines "security" to include a "note."[87]

For the purposes of the motion to dismiss, the Former Noteholder's argument fails on prong one of the §546(e) test.  Although the Bankruptcy Code

---

defined in section 101 or 741 of this title, made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, or that is a transfer made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, in connection with a securities contract, as defined in section 741(7), commodity contract, as defined in section 741(4), or  forward contract, that is made before the commencement of the case, except under section 548(a)(1)(A) of this title.

11 U.S.C. §546(e).

[83]  Section 741 defines "settlement payment" as "a preliminary settlement payment, a partial settlement payment, an interim settlement payment, a settlement payment on account, a final settlement payment, or any other similar payment *commonly used in the securities trade.*"  11 U.S.C. §741(8) (emphasis added).  *See also Lowenschuss v. Resorts Int'l, Inc. (In re Resorts Int'l),* 181 F.3d  505, 515 (3d Cir. 1999) (discussing a leveraged buyout as a settlement payment).

[84]  *Rosener v. Majestic Mgmt. (In re OODC, LLC),* 321 B.R. 128, 144 (Bankr. D. Del. 2005).

[85]  *Resorts,* 181 F.3d at 515.  *Cf. Bevill, Cresler & Schulman Asset Management Corp. v. Spenser Savings & Loan Ass'n,* 878 F.2d 742, 752 (3d Cir. 1989) (discussing settlement payment under §546(f)).

[86]  *Resorts,* 181 F.3d at 515 (citations omitted).

[87]  11 U.S.C. 101(49)(A)(i).  The Bankruptcy Code specifically excludes "currency, check, draft, bill of exchange or bank letter of credit" from the definition of "security."  11 U.S.C. §101(49)(B)(i).

definition of "security" includes "notes,"[88] it does not necessarily follow that the Exchange Agreement Payment was a "payment commonly used in the securities trade"[89] as required by §745(8). For purposes of this motion, it is sufficiently plausible that the Exchange Agreement Payment was <u>not</u> a claim settlement.

The Former Noteholders, however, argue correctly that the Exchange Agreement Payment satisfies prong two as it was made via wire transfer[90] (completed by a bank)[91] and as such, the cash transfer was "by" a "financial institution."[92] Prong

---

[88] 11 U.S.C. §101(49)(A)(i).

[89] 11 U.S.C. 741(8).

[90] Title 12 of the Code of Federal Regulations, where a wire transfer is defined as an

> . . . unconditional order to a bank to pay a fixed or determinable amount of money to a beneficiary upon receipt or on a day stated in the order, that is transmitted by electronic or other means through Fedwire, the Clearing House Interbank Payments System, other similar network, between banks, or on the books of a bank.

12 C.F.R. § 229.2(II). *See also Loranger Mfg. Corp. v. PNC Bank (In re Loranger Mfg. Corp.)*, 324 B.R. 575, 585 (Bankr. W.D. Pa. 2005). Wire transfers are essentially an electronic check. *Cf. Mellon Bank, N.A. v. Securities Settlement Corp.*, 710 F. Supp. 991, 993 (D.N.J. 1989) (discussing that a "'check is no more than an order on the bank to pay a stated amount . . . from the maker's account.' *Thomas v. First Nat'l. Bank*, 173 Pa. Super. 205, 96 A.2d 196, 197 (1953), *rev'd. on other grounds*, 376 Pa. 181, 101 A.2d 910 (1954). Although checks are negotiable instruments, *Urick Foundry Co. v. Workmen's Compensation Appeal Bd.*, 91 Pa. Commw. 24, 496 A.2d 883, 885 n. 2 (1985), it could be argued that *Thomas*'s definition exactly fits a wire transfer, which is nothing more than an order directing the bank to pay money from one account to another. *See Delbrueck & Co. v. Manufacturers Hanover Trust Co.*, 609 F.2d 1047, 1050 (2nd Cir. 1979) (likening wire transfer to cashier's check); and *see Miracle Hills Centre Ltd. v. Nebraska Nat'l Bank*, 434 N.W.2d 304, 306 (1989) (applying U.C.C. to bank's distribution of wire transfer funds among accounts).").

[91] Furthermore, for the purposes of a wire transfer, a "bank" is defined:

> Bank means --
>
> (1) An insured bank as defined in section 3 of the Federal Deposit Insurance Act (12. U.S.C. 1813). . . .

12 C.F.R. § 229.2(e)(1). *See also Loranger Mfg. Corp*, 324 B.R. at 585.

[92] *See Resorts*, 181 F.3d at 516 ("A payment for shares during [a leveraged buyout] is obviously a common securities transaction, and we therefore hold that it is also a settlement payment for the purposes of section 546(e)."); *Brandt v. B.A. Capital Co. LP (In re Plassein Int'l Corp.)*, 2009 U.S. App. LEXIS 28197, 12-13 (3d Cir. Del. Dec. 22, 2009). Nothing herein shall be a ruling on whether prong two of the test is satisfied.

three is satisfied as this transaction occurred prior to the commencement of the bankruptcy cases.

The Court is again bound by *Twombly* in deciding whether it is plausible that the elements of the asserted cause of action are satisfied. The Court finds that they are and, as a result, will not dismiss Count VI. The Former Noteholders retain all of their defenses, including the defense of claiming that the Exchange Agreement Payment was a settlement agreement under §546(e).

The Former Noteholders also seek to dismiss Count VII of the Complaint which seeks relief under §550 to recover the Exchange Agreement Payment. As the Court did not dismiss Count VI of the Complaint, the Court finds that §550 is applicable. The Trustee may use §550 to recover the $3 million Exchange Agreement Payment and the transfer of stock if the Exchange Agreement Payment is found to be a constructively fraudulent transfer and is avoided under § 548.

### (d)    *Conclusion*

Based on the above rulings, the Court hereby grants Aventis's motion to dismiss and hereby dismisses Counts I, II, III of the Complaint. The Court hereby grants in part the Former Noteholders' motion to dismiss as to Count V of the Complaint. The Court also denies in part the Former Noteholders' motion to dismiss as to Counts VI and VII of the Complaint.

### B.  Motion for Sanctions

Rule 9011 of the Federal Rules of Bankruptcy Procedure tracks the language of Rule 11 of the Federal Rules of Civil Procedure,[93] which "is intended to discourage pleadings that are frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith."[94]  The test is an objective one of reasonableness under the circumstances,[95] and the Court will consider the reasonableness of the party's belief at the time the motion or pleading was filed and not in hindsight.[96]  Moreover, Bankruptcy Rule 9011(c)(1)(A) provides that a "motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected . . . ."[97]

Rule 9011 sanctions are imposed to correct abusive behavior and are reserved for "exceptional circumstances" where a claim is "patently unmeritorious or frivolous."[98]

---

[93]  *See, e.g., Cinema Serv. Corp. v. Edbee Corp.*, 774 F.2d 584, 585-86 (3d Cir. 1985).

[94]  *Kaiser Group, Int'l, Inc. v. Nova Hut a.s. (In re Kaiser Group Int'l, Inc.)*, 2007 Bankr. LEXIS 2256 at *7 (Bankr. D. Del. July 9, 2007) (citations omitted); *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 157 (3d Cir. 1986) (*quoting Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986), *abrogated on other grounds by Cooter v. Gell Hartmax Corp.*, 496 U.S. 384, 399, 110 S. Ct. 2447 (1990).

[95]  *Lieb*, 788 F.2d at 157.  *See also Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir. 1987).

[96]  *Kaiser*, 2007 Bankr. LEXIS 2256 at *7 (citations omitted).

[97]  Fed. R. Bankr. P. 9011(c)(1)(A).

[98]  *Dura Sys., Inc. v. Rothbury Inv., Ltd.*, 886 F.2d 551, 556 (3d Cir. 1989) (*quoting Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) (*citing Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986) ("Rule 11 is violated only when it is patently clear that a claim has absolutely no chance of success."))); *see also Gaiardo*, 835 F.2d at 483.

The rule is "not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories."[99]

The standard for imposing sanctions under Rule 11[100] is stringent because such sanctions (1) are in "derogation of the general American policy of encouraging resort to the courts for peaceful resolution of disputes,"[101] (2) tend to "spawn satellite litigation counter-productive to efficient disposition of cases,"[102] and (3) increase tensions among the litigation bar and between the bench and the bar.[103]

The Former Noteholders argue that the actions of counsel for the Trustee in filing and maintaining the Complaint were objectively unreasonable. They argue that legal research would have revealed that the Exchange Agreement Payment was not recoverable under sections 544, 548, or 550 of the Bankruptcy Code, both because it was a payment for antecedent debt and because it was a "settlement payment" under section 546(e). Moreover, the Trustee's counsel was on notice that, as of receipt of the letter on June 30, 2008, the Complaint was deficient, but the Trustee's counsel took no action to voluntarily dismiss the Complaint or to remedy its infirmities.

---

[99] *Gaiardo*, 835 F.2d at 483.

[100] As Rule 9011 tracks the language of Rule 11, the Court views the Rule 11 factors developed by the Third Circuit persuasive. *See Cinema Serv. Corp.*, 774 F.2d at 585-86.

[101] *Doering*, 857 F.2d at 194 (*citing Eastway Constr. Corp. v. City of New York*, 637 F. Supp. 558, 564 (E.D.N.Y. 1986), *modified and remanded*, 821 F.2d 121 (2d Cir. 1987), *cert. denied*, 484 U.S. 918, 108 S. Ct. 269 (1987)).

[102] *Id*. (*citing Gaiardo*, 835 F.2d at 482).

[103] *Id*. (*citing Eastway*, 637 F. Supp. at 564).

The Trustee's counsel disputes these assertions.  After receiving notice of the Former Noteholders' position on this issue, the firm engaged in additional factual inquiry and legal research.  It nevertheless continued to believe that the Complaint was legally and factually supported, or could reasonably be legally and factually supported by additional evidence to be derived and acquired through discovery.  The Trustee's counsel is not required to specifically detail its legal and factual theories in its response to the motion to dismiss.  Moreover, the basis for the Former Noteholders' motion for sanctions – the potential defense to the action – delves into disputed evidence and would require this Court to make factual findings without affording the Trustee the opportunity to engage in further discovery or even mount opposition to this alleged defense to the motion.

The Court agrees with the Trustee's counsel.  The Complaint sets out facially plausible causes of action against the Former Noteholders.  At the time the original Complaint was filed and after the Trustee's counsel received the sanctions letter from the Former Noteholders, it was reasonable for the Trustee's counsel to believe that the plaintiff's arguments had merit.  Furthermore, as found *infra*, the Court finds that Counts VI and VII of the Complaint cannot be dismissed.  Although the Former Noteholders set forth various defenses to the Complaint, which may be meritorious, the Complaint is facially plausible and sets forth claims for relief.[104]

---

[104] Nonetheless, this is not the inquiry.  Every claim dismissed under Rule 12(b)(6) does not give rise to sanctions under Rule 11.

For these reasons, there is no evidence that the Trustee's counsel's claims were "frivolous, legally unreasonable, . . . without factual foundation," or that the firm intended to abuse the bankruptcy system by filing the original Complaint. Therefore, the Court will deny the Former Noteholders' motion for sanctions.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant Aventis's motion to dismiss Counts I, II, and III of the Complaint. The Court will also grant the Former Noteholders' motion to dismiss Count V of the Complaint, but it will deny the motion to dismiss Counts VI and VII of the Complaint. Finally, the Court will deny the Former Noteholders' motion for sanctions.

An order will be issued.